IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:12-CR-241 |
| **v.** | : | |
| **OMOEFE OKORO** | : | Judge Sylvia H. Rambo |

## M E M O R A N D U M

Before the court is the Motion to Dismiss for Violation of Defendant's Right to a Speedy Trial Due to Pre-Arrest Delay (Doc. 42) filed by Defendant Omoefe Okoro ("Defendant" or "Okoro"). For the reasons stated below, the court shall deny the motion.

### I. Background

On September 26, 2012, a grand jury indicted Okoro of mail fraud, wire fraud, money laundering, and conspiracy, based on the United States Attorney's Office's ("USAO") allegations that Okoro conspired with a group to defraud several law firms out of thirty million dollars. Okoro, however, was not arrested until February 14, 2017. Between those two dates, the USAO went through an extensive process seeking to extradite Okoro from Canada. The USAO coordinated with the Office of International Affairs ("OIA") of the Criminal Division of the United States Department of Justice ("DOJ") to submit sufficient paperwork and proof to acquire the aid of Canadian law enforcement in extraditing Okoro. The United States and Canada have an agreement, by treaty, to cooperate with each other in the extradition

1

of criminals. Canada has complied with the treaty by creating its own internal process for reviewing extradition applications from the United States. While extradition was ultimately successful, this process resulted in an over four-year delay in arresting Okoro.

On June 3, 2019, Defendant filed a motion to dismiss the indictment, arguing, in large part, that the delay in acquiring Okoro's arrest was due to negligent conduct by the USAO. (Doc. 42.) On June 25, 2019, the USAO filed a response, thoroughly laying out the steps it took in attempting to extradite Okoro from Canada. (Doc. 50.) On September 30, 2019, the court held an evidentiary hearing on the matter, whereby the parties elicited testimony from Judge Christy Fawcett, a former Assistant United States Attorney for the Middle District of Pennsylvania from 2000 to 2016. On October 10, 2019, Defendant filed, by leave of court, a supplemental brief in support of his motion to dismiss. (Doc. 61.) This matter is thus ripe for resolution.

## II. **Standard of Review**

The Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"[1] The United States Supreme Court has held that the Sixth Amendment right

---

[1] Sixth Amendment speedy trial rights are distinct from the rights afforded to a defendant under the Speedy Trial Act. *See United States v. Reese*, 917 F.3d 177, 184 (3d Cir. 2019) ("[C]ase law addressing the Sixth Amendment right to a speedy trial [] do not apply in the Speedy Trial Act context.").

to a speedy trial is distinct from "the accused's other constitutional rights" because a long delay in being tried does not inherently prejudice a defendant in the same way being deprived of a lawyer or the opportunity to defend oneself would; in fact, "deprivation of the right may work to the accused's advantage." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). "[T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." *Id.* In contrast to other court-constructed remedies, like the exclusionary rule, the "amorphous quality of the right" to a speedy trial "leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right have been deprived . . . mean[ing] that a defendant who may be guilty of a serious crime will go free, without having been tried. . . . but it is the only possible remedy." *Id.* at 522.

Considering the peculiarity of the right to a speedy trial, the Supreme Court laid out four factors for courts to balance: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. The court must consider these factors in light of the complexity of the crime of which the defendant is accused. *Id*.

3

### III. Discussion.

The first *Barker* factor requires "a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992). First, the court must apply a threshold test, considering the raw length of time between the defendant being accused of a crime and being arrested. The length of delay must be sufficiently long to create presumptive prejudice before the court conducts a full analysis of the *Barker* factors. *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014). Here, the parties agree that, even under the USAO's framing of the issue, a roughly four-year delay occurred between Okoro being accused and arrested. This is sufficient to warrant moving forward in the analysis. *See id.* (holding a fourteen-month delay is sufficient to trigger a full *Barker* analysis) (citing *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009)); *accord Doggett*, 505 U.S. at 652 n.1 (holding the circuit courts have generally held a delay of close to one year satisfies the first factor). Thus, the court turns to the second facet of the delay factor, "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652. Here, the court notes that a four-year delay, on its own, is substantial. This factor thus weighs against the USAO. The court must now turn to examining the cause for such delay, allocating the portion attributable to any unreasonable conduct by the USAO.

In examining the USAO's conduct, the court begins by noting that USAO culpability can be grouped into categories resting on four tiers. At the top is the USAO intentionally delaying trial to gain a tactical advantage over the defendant, an act which would be "weighted heavily against the government." *Barker*, 407 U.S. at 531. One step below that exists USAO negligence, weighted moderately against the USAO. *Id.* The third tier concerns delay caused by events entirely outside of the USAO's control, such as a missing critical witness. Such an event does not warrant any weight against the USAO. *See id.* And the fourth tier concerns portions of delay attributable to the defendant—a situation that, at best, renders the delay irrelevant, and, at worst, suggests the defendant has waived the right to a speedy trial. *See id.* at 529. In evaluating the delay, the court must also consider the complexity of the crime at issue, for "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531.

While analyzing delay and culpability can be complex, the court eschews a lengthy discussion because its decision ultimately turns on one core conclusion. Judge Fawcett, testifying on behalf of the USAO, laid out a very thorough, persuasive, and—to Defendant's admission—credible explanation of how the delay in extraditing Okofor was primarily attributable to the US-Canadian extradition process itself. *Cf. Zilich v. Reid*, 36 F.3d 317, 321-22 (3d Cir. 1994) ("Face to face

with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his or her power of observation often proves the most accurate method of ascertaining the truth.") (internal quotations and brackets omitted).

In *United States v. Alexander*, 817 F.3d 1178 (9th Cir. 2016), the United States Court of Appeals for the Ninth Circuit considered a strikingly similar case. There, the USAO took approximately five years to extradite a man from Canada for conspiracy to commit mail and wire fraud. *Id.* at 1180-81. The USAO introduced similar testimony regarding the long process of obtaining extradition from Canada, explaining that an "extensive back-and-forth between the United States and Canada was 'very typical.'" *Id.* at 1181. Like Defendant, Mr. Alexander was able to pick apart the process, pointing to places where the USAO dragged its feet in getting information back to Canada when it was requested. *See id.* at 1182-83. The Ninth Circuit resolved the issue by allocating some delay to the defendant, some to Canada, and some to the USAO, leaving the USAO with only a few months of responsibility. *See id.* The court thus found that, while some delay was attributable to the USAO, it was ultimately an insufficient amount to warrant a presumption of prejudice. *See id.*

The court finds the reasoning in *Alexander* persuasive. Judge Fawcett's testimony here regarding the specific steps taken by the USAO in seeking Okoro's

extradition leads the court to believe that only a few months of delay could be attributed to the United States's negligence. Specifically, the court finds the length of time between some requests for information and the USAO's response to be inexplicably long. But the majority of the delay seems attributable to the extradition process itself.[2] Because this inquiry concerns the fault of the United States Attorney's Office—not the federal government as a whole—any delay caused by the extradition process itself cannot be attributed to the USAO.

In finding this factor weighs primarily in favor of the USAO, the analysis does not end. As the USAO accurately points out, the "flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). But the *Barker* "factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process," even where one factor lands heavy on one side of the scales. 407 U.S. at 533. As such, with little delay attributable to the USAO, Okoro must show specific, non-speculative prejudice to warrant a finding that his speedy trial rights were violated. *See Alexander*, 817 F.3d

---

[2] Nonetheless, the court shares the concerns expressed by the *Alexander* court regarding the overall inefficiency of the process. *See id.* The mere fact that the Canadian extradition process is difficult does not render any delay in extraditing a suspect residing in Canada *per se* valid. On the one hand, it is unfair to expect an AUSA working on extradition to simply drop everything anytime they receive a request for information from Canada or OIA. On the other hand, the court can imagine a scenario where the USAO's lack of diligence creates an unreasonable delay. *See United States v. Heshelman*, 521 F. App'x 501, 505-06 (6th Cir. 2013) (holding USAO's efforts to avoid "the difficulties in pursuing extradition" from Switzerland was unjustifiable and resulted in a violation of the defendant's speedy trial rights).

7

at 1183 (citing *Doggett*, 505 U.S. at 657). Before examining prejudice, however, the court must determine whether Okoro properly raised his right to a speedy trial.

Turning to the third factor, the court finds Okoro's total conduct reflects an effort to assert his right to a speedy trial. Here, Defendant filed a motion to dismiss shortly after discovery was completed. He explained that a review of the documents turned over in discovery was necessary to enable counsel to fully evaluate the USAO's diligence in seeking Okoro's arrest. This argument is supported by Defendant's use, in his brief, of documents acquired during discovery. Axiomatically, discovery is also necessary to enable the defendant to fully prepare for trial—simply being compelled to attend a trial does not afford the defendant his full rights if counsel could not adequately represent him there. Thus, while Defendant requested a trial extension to conduct discovery, and waited until after discovery was completed before filing his objection, the court finds such actions were reasonable in context and do not suggest Defendant was taking actions inconsistent with his assertion of the right to a speedy trial.

In response, the USAO essentially argues that raising a speedy trial objection through a motion to dismiss is per se unreasonable because it suggests the defendant is not truly concerned with his rights but simply seeks a convenient way to escape prosecution. (*See* Doc. 50, pp. 19-20 (collecting cases).) But the cases the USAO relies upon found defendants filed speedy trial objections late and used them to

avoid, rather than accelerate, a legitimate trial. *See United States v. Santiago-Becerril*, 130 F.3d 11, 22 (1st Cir. 1997) (holding delay "mainly resulted from [defendant's] own motion for a continuance of the trial and his codefendants' motions for changes of pleas" and that the defendant filed the motion to actually avoid trial)[3]; *United States v. Pennick*, 713 F. App'x 33, 36 (2d Cir. 2017) (distinguishing *Rayborn v. Scully*, 858 F.2d 84 (2d Cir. 1988), by explaining that it turned on the facts that the "defendant continually evaded arrest and failed to appear in court"); *Barker*, 407 U.S. at 528 ("We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right."). As explained above, the court views Defendant's conduct as consistent with the proper assertion of his right to a speedy trial, rendering these cases inapposite.

Turning to the final factor of prejudice, the Supreme Court has identified three general categories of harm that delay can cause to a defendant: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (internal quotations and brackets omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."

---

[3] The USAO's other First Circuit case actually held the defendant had adequately asserted his right to a speedy trial, as evidenced by his request that the court rule on some of his pending motions. *See United States v. Carpenter*, 781 F.3d 599, 614 (1st Cir. 2015).

*Id.* (internal quotations omitted). It must also be noted, however, that "[i]t is the Government that bears the burden of proving its case," so delay can also impair the USAO's ability to prove its case at trial. *Loud Hawk*, 474 U.S. at 315. Here, Okoro does not complain of detention or anxiety that occurred during the applicable period of delay. His argument rests on the last category.

In attempting to carry his burden of proving he suffered prejudice from delay, Okoro argues, in his opening brief, that "[o]n information and belief, it is averred" that a potentially exculpatory witness has been convicted, served his sentence, and is now difficult to locate. (Doc. 43, p. 9.) But a statement "on information and belief" is not sufficient for Defendant to carry his burden of proof. *See Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) ("[T]he burden of showing prejudice lies with the individual claiming the violation and the possibility of prejudice is not sufficient[.]") (internal quotations and brackets omitted); *cf. Searer v. West Michigan Telecasters, Inc.*, 381 F. Supp. 634, 643 (W.D. Mich. 1974) ("Statements made 'on information and belief', which comprise nearly all of the crucial points made by plaintiff in his affidavits opposing the motion, are not competent to meet the burden imposed on the respondent by Rule 56(e).").

In his post-hearing briefing, Defendant gets closer to hitting the mark. He now points to some evidence that multiple alleged co-conspirators—with whom he may have been able to form joint defense agreements—have already been convicted,

including one who previously testified in a manner that may have been inconsistent with another inculpatory witness's testimony. The USAO points out Defendant is incapable of pointing to any particular exculpatory statements these now removed witnesses may have made. On the whole, the court finds that damage to a defendant's ability to conduct a thorough investigation is inherently prejudicial to some degree. It would put the cart before the horse to adopt the USAO's argument and require Defendant to show what type of evidence he may have located or testimony he might have elicited. At the same time, the court is mindful that it cannot find significant prejudice based solely on speculation and possibility. *Beyer*, 990 F.2d at 760; *Alexander*, 817 F.3d at 1183 (holding extradited defendant failed to carry his burden of showing actual prejudice because "he has not provided any non-speculative proof as to how his defense was prejudiced by the delay"). The court thus finds Defendant has shown some degree of prejudice and holds that this factor weighs slightly against the USAO.

Examining all the factors together, the court finds Okoro has not suffered sufficient prejudice, attributable to the USAO's negligent delay, to justify dismissing all charges against him. The purpose of the trial here will be to determine whether Defendant participated in a complex scheme that defrauded people of thirty million dollars. If the USAO had intentionally delayed the trial or delayed it in such a manner that Defendant's ability to make his case at trial was truly corrupted,

11

dismissal of such allegations may be warranted. But the court is not willing to allow Defendant to escape a trial on such significant charges simply because the USAO may have marginally impaired Defendant's ability to prepare for trial. Were a lesser remedy available, the court might have considered it, but the Supreme Court has made clear complete dismissal "is the only possible remedy" to the violation of a party's right to a speedy trial. *Barker*, 407 U.S. at 521.

**IV. Conclusion**

For the reasons outlined above, the court shall deny Defendant's motion to dismiss for lack of a speedy trial. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Date: December 10, 2019