IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:12-CR-241** |
| v. | : | |
| **OMOEFE OKORO** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

Before the court is Defendant Omoefe Okoro's motion to dismiss the indictment. (Doc. 101.) For the reasons set forth below, the motion will be denied.

**I.    BACKGROUND**

On September 26, 2012, a grand jury returned an indictment charging Defendant Omoefe Okoro with conspiracy to commit mail and wire fraud, five counts of mail fraud, and ten counts of wire fraud. (Doc. 1.) The indictment alleges that Okoro worked with others "in a collection scam targeting law firms in the United States and Canada and involving the use of counterfeit checks." Following the return of the indictment, the United States Attorney's Office undertook an extensive and protracted process to extradite Okoro from Canada to the United States for trial. The application for Okoro's extradition was eventually granted, and he was arrested on February 14, 2017.

In August 2018, following an unsuccessful challenge to extradition, Okoro made his initial appearance and was arraigned in this district, and trial was scheduled

1

for November 2018. (*See* Docs. 19–20.) The following month, Okoro filed a motion to continue the trial date, which the court granted. (Docs. 25–26.) Okoro thereafter moved to continue trial four more times—in November 2018, December 2018, February 2019, and April 2019. (Docs. 29, 31, 34, 36.) Each of the four motions was unopposed by the government and granted by the court. (*See* Docs. 30, 32, 35, 37.)

On June 3, 2019, Okoro filed his first motion to dismiss the indictment based on an alleged speedy trial violation. (Doc. 42.) While the motion was pending, Okoro filed three more motions to continue the trial date, each of which was granted. (*See* Docs. 48, 49, 51, 52, 63, 64.) The court denied Okoro's motion to dismiss in December 2019 following an evidentiary hearing. (Docs. 65–66.) The court found that Okoro had sufficiently asserted his right to a speedy trial, and that the four-year delay between Okoro's indictment and arrest was substantial and weighed against the government. *See United States v. Okoro*, No. 1:12-CR-241, 2019 WL 6715807, at *2 (M.D. Pa. Dec. 10, 2019). However, it also found that the primary reason for the substantial delay in arresting Okoro was the U.S.-Canadian extradition process for which the United States Attorney's Office could not be faulted, and it attributed only a few months of delay to the government's negligence. *Id.* at *3. In addition, the court found that Okoro failed to show any concrete harm relating to his ability to adequately prepare for trial, but noted that any delay inherently prejudices, to some extent, a defendant's right to fully investigate the charges against him, and

accordingly determined that this factor weighs slightly against the government. *Id.* at *4. Following the court's denial of the motion, Okoro filed two additional motions to continue trial in January and February 2020, both of which were granted by the court. (Docs. 68, 69, 71, 72.)

In March 2020, the ongoing COVID-19 global pandemic hit the United States, and federal courts began enacting protocols to prevent the spread the of the virus and protect the health and safety of courtroom participants. On March 30, 2020, in response to the pandemic and pursuant to General Order 20-01 issued by Chief Judge Connor regarding the general continuance of proceedings due to public health concerns, the court issued an order on March 30, 2020 continuing trial from April 6, 2020 to June 1, 2020. (Doc. 75.) A second continuance order was issued on May 22, 2020 due to the pandemic, and trial was continued to August 3, 2020. (Doc. 76.)

In June 2020, Okoro's then-counsel moved to withdraw as his attorney and requested the appointment of new counsel. (Doc. 77.) The court granted the motion and appointed new counsel, and the following month, new counsel filed a motion to continue the August 2020 trial date, which was granted. (Docs. 79–80.) The defense then moved again in September 2020 to continue trial. The motion was granted and trial was set for January 4, 2021. (Docs. 81–82.)

In November 2020, the government moved to continue trial based on scheduling issues, COVID-19-related courtroom restrictions limiting the number of

trials that may be held, and concerns regarding the safe travel of essential witness from Canada to Pennsylvania during the ongoing pandemic. (Doc. 83.) The court granted the motion over Defendant's objection and scheduled trial for April 19, 2021. (Doc. 84.) The government then filed a subsequent motion to continue trial in March 2021 based on the same concerns. The court again granted the motion over Defendant's objection and scheduled trial for September 7, 2021. (Docs. 85–86.)

In June 2021, defense counsel moved to withdraw as counsel for Okoro due to irreconcilable differences between counsel and Defendant. (Doc. 87.) The court granted the motion and appointed current defense counsel. (Docs. 89–90.) On July 13, 2021, the court continued trial generally and granted the defense leave to file a motion to dismiss the indictment based on events that occurred after Okoro's first appearance in this district. (Docs. 93–94.) The defense thereafter timely filed its motion to dismiss the indictment, which has been fully briefed and is ripe for review.[1] (Doc. 101.)

## II.   STANDARD OF REVIEW

The Sixth Amendment to the Constitution provides all defendants with the right to a speedy and public trial. U.S. CONST. AMEND. VI. To determine whether a

---

[1] After the court granted leave for the defense to file a motion to dismiss, the defense moved with the government's concurrence to extend its deadline for filing the motion from September 13, 2021 to November 12, 2021, and the court granted the motion. (Docs. 96–97.) Following the filing of the motion, the government moved with the defense's concurrence to extend its deadline for filing an opposition brief from November 24, 2021 to December 24, 2021, and the court again granted the motion. (Docs. 104–105.) A reply brief was filed on December 29, 2021. (Doc. 107.)

defendant has been deprived of his or her right to a speedy trial, the Supreme Court has adopted a four-part balancing test which examines (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of a speedy trial right; and (4) whether the defendant suffered prejudice as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 530–31 (1972). "None of these factors is either a necessary or sufficient condition, and the factors must be considered together with such other circumstances as may be relevant." *U.S. v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009) (quoting *Barker*, 407 U.S. at 533).

### III.  DISCUSSION

The first *Barker* factor asks whether the delay alleged by the defendant is of sufficient length to trigger analysis of the remaining factors. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). The defendant must "must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (quoting *Doggett*, 505 U.S. at 652). While delays of fourteen months are generally sufficient to trigger analysis of the other factors, *see id.*; *Doggett,* 505 U.S. at 652 n.1, the inquiry is "necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530. If the defendant makes this threshold showing, then "the state, not the prisoner, bears the burden to justify the delay," and the court must assess "the extent to which the delay stretches beyond the

bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 652 (citations omitted). "[The] enquiry is significant to the speedy trial analysis because the presumption that pretrial delay has prejudiced the accused intensifies over time." *Velazquez*, 749 F.3d at 174 (quoting *Doggett*, 505 U.S. at 652.) Here, the length of the delay from Okoro's September 26, 2012 indictment until today is more than 9 years, which is sufficient to trigger the speedy trial inquiry and assessment of the remaining factors. *See Hakeem v. Beyer*, 990 F.2d 750, 761 n.7 (3d Cir. 1993) (noting that delay is "calculated from the time of indictment or arrest"). The period of delay is also substantial in its own right, regardless of the complexity of the matters presented, as it not particularly uncommon that courts find Sixth Amendment violations based on shorter delays. *See, e.g.*, *Doggett*, 505 U.S. at 652. That said, the delay is somewhat mitigated by the fact that Okoro was not detained until more than four years after the indictment. *See United States v. Dent*, 149 F.3d 180, 184 (3d Cir. 1998) ("[T]he seriousness of a post-accusation delay varies depending on the circumstances, and a waiting period during which the defendant is not detained presents fewer concerns than a wait accompanied by pretrial incarceration.").

The second *Barker* factor requires the court to assess each party's responsibility for the delay and "subtract the amount of delay caused by the defendant from the delay caused by the Government." *Battis*, 589 F.3d at 679–80

(*citing Dent*, 149 F.3d at 184–85; *Hakeem*, 990 F.2d at 770). Delay caused by the defendant or defense counsel weighs against the defendant. *Id.* (citing *Vermont v. Brillon*, 129 S. Ct. 1283, 1290–91 (2009)). With respect to delay caused by the government, the Supreme Court has instructed that "different weights should be assigned to different reasons" put forward. *Barker*, 407 U.S. at 531. For example, a "deliberate attempt to delay the trial in order to hamper the defense" would weigh heavily against the government, while "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* "A valid reason" for delay, on the other hand, such as a missing witness, "should serve to justify appropriate delay." *Id*. The government "bears the burden to justify the delay." *Battis*, 589 F.3d at 680 (quoting *Hakeem*, 990 F.2d at 770).

The Third Circuit has noted that the range of government effort to pursue a defendant has been described as ranging from "reasonable diligence" to "bad-faith delay." *Velazquez*, 749 F.3d at 175–76 (quoting *Doggett*, 505 U.S. at 656). Where reasonable diligence is shown, a speedy trial claim "will fail however great the delay, so long as the accused could not show specific prejudice to his defense," while bad-faith delay "would make relief virtually automatic." *Id*. (quoting *Doggett*, 505 U.S. at 657) (internal quotation marks omitted). A more neutral justification for the delay,

such as negligence, weighs against the government less heavily. *Id.* (citing *Barker*, 407 U.S. at 531). Negligence nevertheless "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* (quoting *Doggett*, 505 U.S. at 657).

As the court found in its December 10, 2019 memorandum, the delay between Okoro's indictment on September 26, 2012 and his arraignment on August 30, 2018 was almost entirely caused by the lengthy application and judicial process for extradition, for which the government could not be faulted. (Doc. 65, pp. 5–7.) After holding a hearing and receiving in-depth testimony regarding the government's substantial efforts to extradite Okoro, the court found that only a few months of delay during this period could be attributed to the government's negligence. (*Id.*) The parties agree that this determination is law of the case, and neither seeks to relitigate the issue. (*See* Doc. 102, p. 12 n.2; Doc. 106, pp. 5–7.)

The 1,168-day delay between Okoro's arraignment and his present motion was caused by a number of reasons, including two court-ordered continuances due to the pandemic and the district's suspension of jury trials, which caused a delay of 114 days. (*See* Doc. 106, pp. 12-14.) In addition, the government filed two requests to continue, accounting for a delay of 246 days. (*See id.* p. 12.) One request was made because the government was unable to secure witnesses for trial due to the pandemic. (Doc. 85, ¶¶ 4–5.) The other request was made after the court informed

8

the parties that trial would have to be continued due to courthouse COVID-19 restrictions. (*See* Doc. 83, ¶ 3.) The government filed a formal motion for continuance so that it could receive a date certain and begin to secure witnesses, and it requested the earliest available new trial date that had been communicated by the court. (*See id.* at ¶¶ 3, 6.) Okoro and his counsel also contributed to the delay, including by filing twelve motions to continue trial, two requests for substitution of counsel, and one prior motion to dismiss the indictment, which combined created a delay of 671 days. Okoro's motions to continue cited ongoing discovery exchanges between the parties, the defense's need for additional time to review discovery materials, and a pending motion to dismiss filed by Okoro. (*See* Docs. 25, 29, 31, 34, 48, 51.) His first counsel was substituted out because he resigned his position on the Criminal Justice Act ("CJA") panel, and his second counsel was substituted out due to a breakdown of the attorney-client relationship. (Docs. 77–78.)

In total, this leaves the government responsible for roughly one year of delay, four to five months of which were caused by its negligence in connection with the application for Okoro's extradition, with the remaining eight-month period attributable to reasons largely outside its control and for which it bears only minimal responsibility. *See United States v. Kaetz*, No. 2:21-CR-71, 2021 WL 1251711, at *6–7 (D.N.J. Apr. 5, 2021) ("While not [defendant's] doing, the added burdens on the government further show that any delays are not due to the government's

negligence."). The defense is responsible for approximately twenty-two months of delay, even without counting the period of delay caused by Okoro's unsuccessful challenge to extradition. (*See* Doc. 106, pp. 11-12.) Much of that delay was attributable to actions within Okoro's personal control, such as the filing of his motion to dismiss and the substitution of counsel due to a breakdown of the attorney-client relationship, as well as actions within the control of Okoro's counsel, such as the defense's request for additional time to review discovery, and counsel's resignation from the CJA panel. While three of the defense's continuance motions cited voluminous discovery and ongoing document exchanges with the government, and thus may have been spurred by matters at least partially beyond its control, the record as a whole reflects that Okoro and his counsel have been responsible for the vast majority of delay in this matter.

To be sure, there is no indication that any of Okoro's filings were made in bad faith, and the defense has been far from the only source of delay in this matter, as court-ordered continuances due to the pandemic and the district's suspension of jury trials contributed to an additional five months of delay. *See Kaetz*, 2021 WL 1251711, at *6 (finding suspension of jury trials based on COVID-19 a neutral factor that does not weigh in favor of finding a violation of a defendant's speedy trial rights). But the record is clear that he and his various counsel have been the primary source of delay in this matter, and that much of the delay caused by the government,

which has prosecuted this case with reasonable diligence, was based on factors largely outside of its control. Accordingly, this factor weighs strongly against finding a violation of Okoro's speedy trial rights. *See United States v. Loud Hawk*, 474 U.S. 302, 316–17 (1986) ("Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, ... [D]efendant [is] not now able to criticize the very process which [he] so frequently called upon.") (citation omitted); *United States v. Souza*, 749 F.3d 74, 82–83 (1st Cir. 2014) (finding that the government set forth valid bases for continuing trial and that the defense was primarily responsible for the delay based on, among other things, its filing of two pretrial motions, three substitutions of counsel, and numerous motions for continuances); *United States v. Green*, 471 F. Supp. 3d 577, 598 (M.D. Pa. 2020) (finding that the reason for the delay weighed against defendant based his filing of numerous pretrial motions); *United States v. Rodriguez-Mendez*, No. 17-CR-15, 2021 WL 3025898, at *11–13 (W.D. Pa. July 16, 2021) ("Since the delay in this case is attributable to either Defendant, or his co-defendants, or to the pandemic, under the totality of circumstances the Court finds that the reason for the delay weighs heavily against a finding of a constitutional speedy trial violation.").

The third *Barker* factor asks whether the defendant asserted his speedy trial rights, which constitutes "evidence that the defendant was being deprived of his constitutional right since 'the more serious the deprivation, the more likely a

defendant is to complain.'" *Battis*, 589 F.3d at 681 (quoting *Barker*, 407 U.S. at 531) (brackets omitted). A defendant represented by counsel may show that he asserted his right to a speedy trial by identifying "a motion or some evidence of direct instruction to counsel to assert the right at a time when formal assertion would have some chance of success." *Id.* (quoting *Hakeem*, 990 F.2d at 766). Here, there is no dispute that Okoro asserted his speedy trial right, including in a motion to dismiss the indictment based on the period of delay prior to his arrest, which was filed soon after defense counsel completed discovery (Doc. 42; *see* Doc. 65, pp. 8–9); in a pro se petition for a writ of habeas corpus, where Okoro sought to "ascertain the constitutionality" of his continued pretrial incarceration (*see* Case No. 3:21-CV-137 at Doc. 1, p. 3); and in current counsel's July 2021 request for leave to file the present motion (*see* Doc. 91). The weight afforded to Okoro's assertion of his rights, however, is limited under the circumstances, because while his actions that have delayed this matter may not evidence a bad faith effort to hamper the government, they also do not indicate a particular readiness or willingness to stand trial. *See Loud Hawk*, 474 U.S. at 314 (stating that a defendant's assertion of speedy trial rights "must be viewed in the light of [their] other conduct"); *Hakeem*, 990 F.2d at 764 ("Repeated assertions of the right do not, however, balance this factor in favor of a petitioner when other actions indicate that he is unwilling or unready to go to trial. Accordingly, other courts have emphasized the need for a petitioner to show he

'vigorously pursued a speedy trial' if the factor of its assertion is to be weighed in the petitioner's favor.") (citations omitted); *Battis*, 589 F.3d at 681 ("[W]hen a defendant requests a speedy trial, but 'through contrary actions evidences an unwillingness to commence with the trial requested, [the] request carries minimal weight.'") (quoting *Hakeem*, 990 F.2d at 765) (ellipses omitted); *United States v. Rinaldi*, No. 3:18-CR-279, 2020 WL 3288173, at *16 (M.D. Pa. June 18, 2020) ("[T]he genuineness of Defendant's assertions of his rights are undercut by Defendant's repeated successful attempts to further prolong the commencement of his trial by filing new pre-trial motions."); *United States v. Hafner*, No. 19-CR-790, 2020 WL 7028552, at *2–5 (D.N.J. Nov. 30, 2020) ("Although Defendant was well within his rights to file [pretrial] motions and request the extensions, they evince his unwillingness to commence the trial.").

The final and most important *Barker* factor is whether the defendant is prejudiced by the delay in bringing him to trial. *See Hakeem*, 990 F.2d at 760. "A defendant can establish specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Battis*, 589 F.3d at 682–83 (quoting *Barker*, 407 U.S. 532). The defendant generally has the burden of showing that the delay caused some concrete prejudice, as the mere "possibility of prejudice is not sufficient to support the position that speedy trial

rights are being violated." *Hakeem*, 990 F.2d at 760 (quoting *Loud Hawk*, 474 U.S. at 315) (cleaned up).

However, in certain circumstances where the government's delay in bringing a defendant to trial is particularly excessive, a presumption of prejudice may arise. *See Doggett*, 505 U.S. at 655 ("[E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). The Third Circuit has held that a fourteen-month delay between a defendant's arrest and trial does not trigger the presumption, *Hakeem*, 990 F.2d at 764, but that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government." *Battis*, 589 F.3d at 682–83. Even where the presumption does apply, it "can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively proves' that the delay left the defendant's ability to defend himself unimpaired.'" *Id.* (quoting *Doggett*, 505 U.S. at 655, n.1).

Here, Okoro has some minimal prejudice stemming from the delay in bringing this case to trial. Okoro argues that the delay in bringing him to trial deprived him of the ability to call a co-conspirator as a witness and develop a defense based on his testimony, since the co-conspirator cannot be found and is believed to have been deported by the government. Okoro made the same argument in his prior motion to

14

dismiss the indictment, and the court found that he presented some evidence of slight prejudice stemming from the government's delay of a few months in connection with the application for his extradition. The court's ruling is law of the case, and the defense cites no reason for reconsidering the matter other than its willingness to expound upon the argument that was previously made.[2] (*See* Doc. 61, p. 9.)

Additionally, Okoro contends that his lengthy pre-trial detention of forty months has been oppressive and has caused him anxiety and concern by separating him from his wife and children, who live in Canada, and because his place of incarceration is overcrowded and has a history of safety incidents. Okoro's concerns are not unreasonable, and the delays caused by this district's safety protocols related to the global pandemic are regrettable. But the sub-standard conditions and

---

[2] The defense also has not shown that reconsideration is necessary to prevent manifest injustice. Even if the court did reconsider its prior determination that Okoro's inability to locate his alleged co-conspirator presented only slight evidence of prejudice that does not warrant dismissal, Okoro's present motion fails to meaningfully develop its lead argument on the issue, the merits of which cannot be ascertained, that having access to the co-conspirator would aid in Okoro's defense by permitting him to exclude unspecified hearsay testimony by a different witness. Okoro's only other specific argument on the matter relates not to his inability to defend against the charges against him, but his inability to defend against hypothetical arguments the government might make at sentencing, in the event he is found guilty. Specifically, the defense points to evidence suggesting that toward the end of 2008, Okoro's co-conspirator participated in a separate but similar conspiracy with another of Okoro's co-conspirators and without Okoro's knowledge. It argues that interviewing the co-conspirator would have been essential to Okoro's defense, because if in fact Okoro had no involvement with the separate scheme, "then losses attributed to the conduct of said other conspiracy could not be applied against Okoro as relevant conduct when calculating the Sentencing Guidelines, if he is ever convicted." (Doc. 102, pp. 21–22) (emphasis original). The defense's evidence undoubtedly shows that it had some interest in interviewing Okoro's alleged co-conspirator, but just as the court found in deciding Okoro's first motion, the defense's arguments that Okoro will suffer prejudice from its inability to do so rely on a measurable degree of speculation that is insufficient to warrant dismissal under the circumstances. *See Okoro*, 2019 WL 6715807, at *4.

oppressive factors he cites, on the whole, necessarily attend imprisonment, *see Hakeem*, 990 F.2d at 761, and the fact remains that the defense and Okoro himself have been the primary cause of delay in bringing this case to trial, and as such it is they who bear the majority of blame for extending Okoro's sub-par conditions of incarceration and contributing to his generalized claims of anxiety. *See United States v. Duran-Gomez*, 984 F.3d 366, 374–75 (5th Cir. 2020) (finding no show actual prejudice stemming from oppressive pre-trial incarceration where the defendant himself substantially contributed to the pre-trial delay); *see also United States v. Williams*, No. 3:18-CR-153, 2021 WL 278306, at *18 (M.D. Pa. Jan. 27, 2021) (["D]uring the COVID-19 pandemic, conditions of confinement related to COVID-19's attendant risks and prison conditions aimed at addressing the virus are the norm—during this time they cannot be considered "unusually oppressive" as a matter of course."). The conditions of Okoro's confinement and his general anxiety stemming from forty months of pre-trial incarceration thus carry little weight and are substantially discounted in light of the defense's own role in delaying trial.

Finally, assuming that a presumption of prejudice arises based on the sheer length of time since Okoro's indictment, the government has persuasively mitigated or overcome the presumption by showing that Okoro acquiesced in the delay. *See Battis*, 589 F.3d at 682; *Doggett*, 505 U.S. at 658, n.1. The government has demonstrated that Okoro and his counsel have been the principal cause of delay in

this matter, and that defense's pretrial motions, requests for continuance, and substitutions of counsel have delayed trial by almost two years. The defense did not object to any of the court-ordered continuances due to the pandemic, and its general objections to both government continuance requests carry minimal significance absent any real indication of its own readiness and willingness to proceed to trial. Any presumption of prejudice therefore does not ultimately weigh in Okoro's favor. *See Souza*, 749 F.3d at 82 (finding presumption overcome where defendant caused a majority of the delay); *Rodriguez-Mendez*, 2021 WL 3025898, at *11–13 (similar and noting the defendant's failure to object to court-ordered continuances based on the pandemic).

For the foregoing reasons, the court finds that Okoro's right to a speedy trial was not violated. The nine-year delay between Okoro's indictment and trial is lengthy by any measure. But Okoro was not incarcerated for four of the years, and he himself was the cause of approximately two years of delay, even excluding the period of time he spent challenging extradition. The government's negligence has only accounted for a few months of delay, and it is only minimally responsible for the additional eight months of delay it has caused since Okoro's first appearance in this district, which were based on factors largely outside its control. Given these circumstances, Okoro has not shown the type of concrete prejudice needed to dismiss the indictment. While Okoro's inability to interview a co-conspirator

presents some evidence of prejudice, the court has already held that any such prejudice is speculative and insufficient to dismiss the indictment, and any presumption of prejudice has been overcome by the government's showing that Okoro acquiesced to the delay. Dismissal would therefore be improper.

### IV. CONCLUSION

For the reasons set forth above, Defendant Omoefe Okoro's motion to dismiss the indictment based on speedy trial grounds will be denied. An appropriate order shall follow.

Dated: February 9, 2022

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge