**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:12-CR-0241 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMOEFE OKORO | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is a motion to dismiss the indictment based on a violation of the Sixth Amendment right to a speedy trial filed by Defendant Omoefe Okoro ("Okoro"). (Doc. 171.) In this fourth motion to dismiss based on the Sixth Amendment, Okoro argues that the court should not be bound by the prior rulings denying his motions to dismiss and should now find that the *Barker* factors weigh in favor of dismissal. The Sixth Amendment promises an accused the right to a speedy trial. During the hearing on this motion, Okoro expressed the view that it is just not right that he has been detained for nearly six years without a trial. Applying the controlling law to the facts of this case, the court agrees with Okoro. For the reasons that follow, the court will grant the motion to dismiss the indictment with prejudice.

### BACKGROUND

On September 26, 2012, the United States filed an eighteen-count indictment against Okoro, a Nigerian citizen who resided in Canada, alleging that he and

others conspired to engage in a collection scam targeting law firms in the United States and Canada.  (Doc. 1.)  The specific counts are as follows: conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. §1349 (Count 1); mail fraud in violation of 18 U.S.C. § 1341 (Counts 2 through 6); wire fraud in violation of 18 U.S.C. § 1343 (Counts 7 through 16); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 17); and forfeiture (Count 18).  (*Id.*)

The parties identified four alleged co-conspirators.  Emmanuel Ekhator was indicted on September 1, 2010, arraigned on August 11, 2011, entered a guilty plea on January 18, 2013, and sentenced on September 4, 2013.   (*See United States v. Ekhator*, 10-cr-244, Docs. 1, 48, 124, 149.)  Yvette Mathurin, a co-defendant of Ekhator, was arraigned on March 24, 2017, pled guilty on February 1, 2018, and sentenced on October 24, 2018.  (*See United States v. Mathurin*, 10-cr-244, Doc. 158, 200, 219.)  Kingsley Osagie was indicted on April 20, 2011, arraigned on December 18, 2012, entered a guilty plea on March 20, 2014, and sentenced on July 25, 2014.  (*See United States v. Osagie*, 11-cr-138, Docs. 1, 14, 52, 63.)  Finally, Henry Okpalefe was indicted on September 26, 2012 and arraigned on January 5, 2016.  (*See United States v. Okpalefe*, 12-cr-240, Docs. 1, 19.)  A bench trial was convened on January 23, 2017, and Okpalefe was found guilty of certain counts on March 30, 2017.  (*See United States v. Okpalefe*, 12-cr-240, Doc. 70.)

Okpalefe was sentenced on August 6, 2018.  (*See United States v. Okpalefe*, 12-cr-240, Doc. 103.)

Okoro, however, was not arrested until February 14, 2017, in Canada.  But due to challenging his extradition to the United States, he did not appear for his initial appearance in this matter until August 30, 2018, and was ordered detained pending trial.[1]  (*See* Doc. 21.)  On June 3, 2019, Okoro filed a motion to dismiss the indictment for violation of a right to a speedy trial due to pre-arrest delay.  (Doc. 42.)  The court denied the motion on December 19, 2019 ("the 2019 opinion").  (Docs. 65–66.)

On June 3, 2020, Okoro's court-appointed attorney, David Mueller, requested to withdraw as counsel because he would no longer be working in private practice and planned to resign from the Criminal Justice Act ("CJA") Panel.  (Doc. 77.)  The court granted Attorney Mueller's motion and appointed new counsel, Robert Daniels, to represent Okoro.  (Doc. 78.)  On June 21, 2021, Attorney Daniels moved to withdraw as counsel due to irreconcilable differences.  (Doc. 87.)  The court again granted counsel's motion, without holding a hearing, and appointed Okoro's current counsel, K. Wesley Mishoe.  (Doc. 90.)

---

[1] This case was originally assigned to the late Judge William W. Caldwell.  On February 4, 2018, this matter was reassigned to Judge Sylvia H. Rambo.  Judge Rambo ruled on numerous pretrial motions, including the prior motions to dismiss for speedy trial violations.  This case was then reassigned to the undersigned on April 11, 2022.

On November 10, 2021, Okoro filed his second motion to dismiss the indictment on speedy trial grounds. (Doc. 101.) The court did not convene an evidentiary hearing and denied the motion on February 9, 2022 ("the 2022 opinion"). (Docs. 108–109.) Okoro subsequently filed a motion for reconsideration of the court's opinion, which Judge Rambo denied on April 11, 2022. (Docs. 111, 113, 114, 115.) On the same day, this matter was reassigned to the undersigned.

Okoro then filed his third motion to dismiss the indictment based on the Sixth Amendment and Federal Rule of Criminal Procedure 48(b) on July 25, 2022. (Doc. 142.) Therein, Okoro argued that the Government failed to produce certain discovery to him. However, on August 1, 2022, Okoro withdrew his motion because he learned that the discovery at issue had been provided to prior defense counsel, but was not transferred to current counsel. (Docs. 148, 151.) Thus, the court did not rule on the merits of the third motion to dismiss.

In advance of the trial set to begin on April 17, 2023, Okoro filed his fourth motion to dismiss under the Sixth Amendment and requested that the court hold an evidentiary hearing. (Doc. 171.) The court convened an evidentiary hearing on March 2, 2023. Okoro was the sole witness. Following an expedited briefing schedule, Okoro filed a brief in support of his motion on March 9, 2023, the Government filed a brief in opposition on March 17, 2023, and Okoro filed a reply

on March 21, 2023.  (Docs. 172, 174, 178, 179.)  Thus, this motion is ripe for review.

DISCUSSION

Okoro argues, as a threshold matter, that the court is able to independently review the speedy-trial issues without being bound by the law of the case doctrine. (Doc. 174, p. 8–12.)[2]  Okoro then submits that the *Barker* factors weigh in his favor, requiring the court to dismiss the indictment with prejudice because his constitutional right to a speedy trial has been violated.  (*Id.* at 12–30.)  The Government disagrees with both arguments.

### A. The Court Is Not Bound By The Law of the Case Doctrine In This Instance.

Addressing the threshold issue first, the court must determine whether it is bound by the law of the case, i.e. the rulings made by Judge Rambo on the two previous motions to dismiss and the motion for reconsideration.  After consideration of the case law and the parties' arguments, the court finds that it is not bound by the law of the case doctrine.

The law of the case doctrine is "a judicial rule of practice meant to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"  *United States ex rel. Petratos v. Genentech Inc.*, 855

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

F.3d 481, 493 (3d Cir. 2017) (citation omitted).  But, this doctrine "does not limit the power of trial judges to reconsider their prior decisions." *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 19997).  In particular, "[i]nterlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case." *Petratos*, 855 F.3d at 493 (quoting *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994)).

While the doctrine "does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court . . . it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of [her] predecessors in a given case." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994).   In reconsidering its prior rulings, there are two prudential considerations that limit a trial court's authority: (1) "the court must explain on the record the reasoning behind its decision to reconsider the prior ruling;" and (2) "the court must take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." *Williams*, 130 F.3d at 573.

Here, Okoro argues that the law of the case doctrine does not bind a district court judge from revisiting its own prior ruling, nor does it bind a judge from revisiting a predecessor judge's rulings in the same case.  (Doc. 174, pp. 8–12.) Conceding that this has not yet been addressed in a criminal case before the Third Circuit, Okoro submits that the court can independently review all aspects of the

motion before it because the orders denying dismissal are non-appealable interlocutory decisions.  (*Id.* at 10.)  As to the practical aspects of reviewing the court's prior speedy-trial opinions, Okoro argues that the "constitutional right to a speedy trial is not static, to be reviewed in linear segments between various parts of the case."  (*Id.* at 11.)  Rather, whether Okoro's right to a speedy trial has been violated changes over time as the length of delay continues.  (*Id.*)

The Government, in turn, submits that the law of the case "doctrine is not mandatory, but it counsels restraint."  (Doc. 178, p. 6.)  The Government relies on a standard for appellate courts to reconsider prior appellate rulings under the law of the case doctrine, which requires "exceptional circumstances, such as where there has been an intervening change in the law, where new evidence has become available, or where reconsideration is necessary to prevent clear error or manifest injustice."  (*Id.* (quoting *AL Tech Specialty Steel Corp. v. Allegheny Int'l Credit Corp.*, 104 F.3d 601, 605 (3d Cir. 1997)).)  The Government argues that the court should abide by the law of the case doctrine because the new evidence presented by Okoro does meet the exceptional circumstances analysis.  (*Id.* at 6–7.)  However, the Government notes that it "does not object to the Court's new consideration of the period that has passed since Okoro's second motion to dismiss and the accompanying motion to reconsidered were denied by Judge Rambo on April 11, 2022."  (*Id.* at 7.)

Relying on the guidance in the Third Circuit's decision in *Petratos*, the court finds that the law of the case doctrine does not apply in this instance.  In *Petratos*, the Third Circuit found that a district judge was within her discretion to disagree with a predecessor judge's interlocutory order, which was not law of the case. *Petratos*, 855 F.3d at 493 ("Therefore, Judge Wigenton's order granting leave to amend was not the law of the case—and Judge Arleo was within her discretion to disagree with it.")  Here, the prior orders that the Government asserts represent the law of the case are interlocutory orders by a predecessor judge.  Thus, the court is not bound by those rulings and is within its discretion to disagree (or agree) with Judge Rambo's prior opinions resolving Okoro's speedy-trial motions.

While exercising discretion, the court is mindful of the principles underlying the law of the case doctrine—to maintain consistency and avoid reconsideration of matters already decided.  The court does not lightly reach different conclusions than those of the predecessor judge in this case.  As highlighted by Okoro, however, the constitutional right to a speedy trial is not static.  Rather, it evolves with time and changing circumstances.  Because of the constitutional significance of Okoro's right to a speedy trial, the court finds it appropriate to review the issues relating to this right anew.

Further, the court finds that neither party is prejudiced by declining to apply the law of the case doctrine in this instance.  Both parties have fully briefed the law

of the case issue as well as the issues presented in the motion to dismiss indictment and had the opportunity to present evidence at a hearing on the motion.  With this threshold determination made, the court turns to the merits of Okoro's motion.

## B. Sixth Amendment Speedy Trial Analysis

The Sixth Amendment states, in pertinent part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial[.]"  U.S. CONST. AMEND. VI.  "The United States Supreme Court has adopted a flexible balancing test to adjudicate alleged violations of the Sixth Amendment Speedy Trial Clause." *Hakeem v. Beyer*, 990 F.2d 750, 759 (3d Cir. 1993) (citing *Barker v. Wingo*, 407 U.S. 514, 533).  The factors for the court to consider are: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530.  All factors must be considered and weighed as no one factor is dispositive or "talismanic." *Id.* at 533.

### 1. Length of Delay

The Supreme Court has explained that the first factor, the length of delay, actually involves two inquiries:

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness.  If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.  This

latter enquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett v. United States*, 505 U.S. 647, 651 (1992) (internal citations omitted). "Presumptive prejudice," as defined by the Supreme Court in this threshold context, simply "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id.* at 652 n.1. The Supreme Court has found that a delay of 8.5 years is sufficient to trigger this review. *Id.* at 652. Indeed, the Third Circuit has held that a delays of as little as "fourteen months is sufficient to trigger review of the remaining *Barker* factors." *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014) (quoting *United States v. Battis*, 589 F.3d 673, 678 (3d Cir. 2009)).

As to presumptive prejudice, Okoro argues that the court should start its calculation of delay from the date of the indictment – September 26, 2012.  (Doc. 174, p. 14.)  Okoro notes that, although the law of the case does not apply, the court previously started the calculation of delay from the date of the indictment. (*Id.* at 14 n.2 (citing Doc. 65, p. 4.).)  From the date of indictment to present, the delay is 125 months, or nearly 10.5 years, which "clearly suffices to trigger the speedy trial enquiry."  (*Id.* at 15 (quoting *Doggett*, 505 U.S. at 652).)  Okoro asserts that 125 months delay is also "extraordinary" and weighs heavily in favor of dismissal.  (*Id.*)

The Government does not specifically disagree with Okoro. (Doc. 178, p. 10.) Citing the 2019 opinion, the Government notes that the court previously found that the length of delay weighs against the Government. (*Id.* (quoting Doc. 65, p. 4.) The Government submits that Judge Rambo noted this in the 2022 opinion as well. (*Id.* (citing Doc. 108, p. 8).) Ultimately, the Government does not contest these findings.

While the law of the case does not apply here, the court finds Judge Rambo's prior analysis and holdings on this *Barker* factor insightful, particularly since the parties' arguments have not changed. In the 2019 opinion, the court found that the delay of approximately four years between being indicted and arrested was sufficient to move forward with the length of delay analysis. (Doc. 65, p. 4.) As to the second facet of the length of delay factor, the court noted that "a four-year delay, on its own, is substantial" and "thus weighs against the [Government]." (*Id.*) This court similarly finds that the time between indictment and arrest, alone, is sufficient to trigger the *Barker* inquiry. The length of delay factor is intensified today with nearly 10.5 years passing between the indictment and today.

Turning to the second aspect of the length of delay inquiry, the court finds that the presumptive prejudice in this case weighs heavily in favor of dismissal. Courts have categorized a delay of more than five years as extraordinary and

sufficient to presumptively prejudice the defendant.  *See United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014); *see also Battis*, 589 F.3d at 679 (finding that a forty-five-month delay weighed heavily against the government). Here, the delay for Okoro is over 10.5 years, or 3,855 days, which far exceeds the "extraordinary" delay of five years and forty-five months.  Thus, this factor weighs in favor of Okoro and dismissal.

### 2.  Reason for Delay

Next, the court will consider the second *Barker* factor: the reason for the delay.  As the Court of Appeals for the Third Circuit has explained:

> The government bears the burden of justifying the delay in bringing a defendant to trial.  *Battis*, 589 F.3d at 680 (citing *Hakeem*, 990 F.2d at 770).  "In evaluating this factor, we subtract the amount of delay caused by the defendant from the delay caused by the Government."  *Id.* (citing *United States v. Dent*, 149 F.3d 180, 184–85 (3d Cir. 1998)).  In *Battis*, we set forth the three categories of delay and the resulting weight each carries against the government: (1) "A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the government;" (2) "A more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily;" and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay."  *Id.* at 679 (internal quotation marks and citations omitted).  "By contrast, delay caused by the defense weighs against the defendant."  *Id.* at 680 (internal quotation marks omitted).

*United States v. Claxton*, 766 F.3d 280, 294–95 (3d Cir. 2014).

Okoro argues that it is the Government's burden to justify the delay and initially responds in anticipation of the Government's likely arguments.  (Doc. 174,

pp. 27–28.)  First, Okoro submits that the period of delay between extradition and present is not solely his own fault, and the Government has previously admitted that approximately one-third of the delay is not attributable to Okoro.  (*Id.* at 28.)  Second, Okoro urges the court to not attribute delay to him for "aggressively litigat[ing] this case via non-frivolous motions, seek[ing] to obtain the aid of effective representation, and otherwise pursu[ing] a viable defense strategy."  (*Id.* at 28–29 (citing *Burkett v. Fulcomer*, 951 F.2d 1431, 1441 (3d Cir. 1991)).)  Third, the court should not attribute delays to Okoro that were beyond Okoro's control, such as the COVID-19 pandemic, his first attorney resigning from the CJA Panel, and "various issues relating to discovery and the government's lack of knowledge about what was produced throughout the course of the extraordinary delay."  (*Id.* at 29.)  And fourth, Okoro argues that the Government should be, in part, responsible for the four-year delay between indictment and extradition.  (*Id.* at 30.)  In sum, Okoro requests that the court weigh the reason-for-delay factor as neutral and to find that, on balance, this factor does not outweigh the other *Barker* factors that weigh in favor of dismissal of the indictment.  (*Id.* at 30.)

The Government urges the court to adopt the findings in the 2019 and 2022 opinions regarding the reasons for delay, and only review the period of delay from April 11, 2022, through present.  (Doc. 178, pp. 12–13.)  In summary, Judge Rambo held that the cumbersome extradition process was the principal cause for

the delay from September 26, 2012, through February 14, 2017, and weighed this factor in favor of the Government. (*Id.* at 13 (citing Doc. 65, p. 7).) In the 2022 opinion, Judge Rambo found that the "1,168-day delay between Okoro's arraignment and his [then] present motion" weighed strongly against Okoro. (*Id.* (quoting Doc. 108, pp. 10–11).) The Government submits that should the court wish to review the period from indictment through April 2022, it refers the court to its briefs on the prior motions to dismiss. (*Id.* at 13–14.) Because law of the case does not apply here, the court will review the arguments previously presented by the Government.

The Government submits that the time period between arraignment on August 30, 2018, and the filing of Okoro's second motion to dismiss on November 10, 2021, is 1,168 days. (Doc. 106, pp. 11–13.) Of those days, the court is responsible for 114 days for two COVID-19 related *sua sponte* trial continuances. (*Id.*) The Government is responsible for 246 days based on its requested continuances. (*Id.*) Thus, the Government argues that the remaining 808 days are attributable to Okoro. (*Id.*)

Turning to the post-motion for reconsideration timeline, the Government submits that the time from April 11, 2022, through the present should be attributed entirely to Okoro. (Doc. 178, pp. 14–16.) The Government notes that it did not move for any continuances during this period. (*Id.*) The delays were due to

Okoro's counsel getting up to speed with this case, disputes regarding whether discovery materials were provided, and Okoro needing additional time to investigate "potential identification evidence."  (*Id.* at 15.)

The court will address the reasons for delay by category.[3]

### i.  Indictment through arraignment

The first time period at issue is between indictment and arraignment.  In the 2019 opinion, with the benefit of an evidentiary hearing on the issue of the period between indictment (September 26, 2012) and arrest (February 14, 2017) as it related to Okoro's extradition from Canada, Judge Rambo stated:

> Judge Fawcett's testimony here regarding the specific steps taken by the USAO in seeking Okoro's extradition leads the court to believe that only a few months of delay could be attributed to the United States's negligence.  Specifically, the court finds that length of time between some requests for information and the USAO's response to be inexplicably long.  But the majority of the delay seems attributable to the extradition process itself.  Because the inquiry concerns the fault of the United States Attorney's Office—not the federal government as a whole—any delay caused by the extradition process itself cannot be attributed to the USAO.

(Doc. 65, pp. 6–7.)  Neither party has presented any testimony or other evidence to supplement Judge Rambo's factual conclusions regarding this time period.  This court has no basis to disagree with Judge Rambo's factual conclusions as to what

---

[3] In reviewing the reasons for delay, the court did its due diligence and thoroughly reviewed the docket in this case to determine which party moved for a continuance and the reasons for the continuance.  While the court addresses the reasons for delay by category, Appendix A is attached to this memorandum detailing each motion, the reason for request, the number of days attributed to that motion, and how that time is counted.

occurred during this time period.  From a review of the 2019 opinion, it is clear

that the extradition process was cumbersome and lengthy, taking over four years to

arrive at an arrest (specifically 1,602 days) and an additional 562 days between

Okoro's arrest and arraignment in the United States on August 30, 2018.

However, the court differs in its conclusion regarding how to assess this

category of time for purposes of Sixth Amendment speedy-trial analysis.  The

court finds that the 2,164 days between indictment and arraignment should be

viewed as neutral.  While there certainly was some negligence on behalf of the

Government, that can only account for a few months of this time period.  The

remaining delay stems for the cumbersome extradition process and Okoro's right

to challenge that process.  While the slow pace of the extradition process was

largely the result of the process itself, rather than delay by the United States

Attorney's Office, the time should not weigh against Okoro.  Instead, the time

period, viewed overall as neutral, weighs against the Government, though not

heavily.

### ii.  Okoro's motions to continue

Next, turning to the motions to continue trial, Okoro has filed fifteen

motions to continue trial throughout this case.  Of those, six motions detailed that

the reason for seeking a continuance was related to discovery issues.  (Docs. 25,

29, 31, 34, 127, 152.)  Specifically, Okoro stated that the Government had not yet

provided discovery; some discovery was provided but additional exchange of discovery was ongoing; the Government was delayed in providing discovery due to third-party vendor data issues; additional discovery was provided on the eve of a trial date; and discovery that was produced to Okoro's first attorney was not subsequently provided to his current attorney until several weeks before another trial date.  (Docs. 25, 29, 31, 34, 127, 152.)  The amount of delay from these six motions is 337 days.  While Okoro has not alleged bad faith by the Government, and the court does not find any evidence of bad faith, the court observes that the Government has had since at least the date of indictment, September 26, 2012, to have discovery prepared to provide to defense counsel.  The Government also completed a co-conspirator's trial in 2017 and resolved several other co-conspirator cases by plea in 2013, 2014, and 2018.  Accordingly, the court views these discovery-related delays as reflecting negligence by the Government and weighs this time against the Government, though not heavily.  *See Battis*, 589 F.3d at 679.

Three motions to continue trial filed by Okoro were based on the development and pendency of his first motion to dismiss.  (Docs. 48, 51, 63.)  In these motions, Okoro noted that the motion was still being briefed; the motion was fully briefed and pending with the court and requested an evidentiary hearing; and that, following the evidentiary hearing, the motion was still pending before the

court.  (Docs. 48, 51, 63.)  The Government would have this time count against Okoro.  The court disagrees.

In *Burkett v. Fulcomer*, 951 F.2d 1431 (3d Cir. 1991), the Third Circuit found that it was an error to attribute "aggressive petitioning of the courts" against the defendant.  The court stated that the defendant "sought merely to compel the Blair County Court to act upon his post-trial motions, or to obtain counsel who would either petition the court to act, to preserve his speedy trial rights, or to secure his appeal rights."  *Id.* at 1441.  Thus, the court held that the defendant's "tenacity in pursing his claims heavily weigh[ed] this factor in his favor."  *Id.*

Citing *Burkett*, the court in *United States v. Akinola*, No. 2017 WL 77414, at *4 (D.N.J. Jan. 9, 2017), found the reason for delay factor to be neutral.  The court recognized the difficulty in evaluating this factor due to "the long and tortuous procedural history of this matter."  *Id.* at *3.  The court noted that both parties contributed to the extensive delay and that the defendant was responsible for much of the delay due to his litigation strategy that was heavy with motions for new counsel, bail, and reconsideration.  *Id.*  However, following *Burkett*, the found that "although Defendant—rather than the Government—is the source of much of the delay in this matter, *Burkett* stands for the proposition that the Court should not weigh against Defendant delays caused by his attempts to vigorously pursue his defense."  *Id.* at *4.

In reliance on the rationale articulated in *Burkett* and *Akinola*, the court will not weigh the three continuance requests based on the first motion to dismiss against Okoro. The court finds this time of 182 days to be neutral.

Okoro also filed five motions to continue trial citing reasons of needing additional time to review discovery, investigating and evaluating the case, potentially negotiating a pre-trial resolution, and preparing for trial to minimize trial issues and file motions in limine. (Docs. 36, 67, 71, 81, 154.) This time fits squarely within the time that should be counted against Okoro. Accordingly, the court finds that 419 days weighs against Okoro.

The final defense motion to continue resulted from a change in counsel. (Doc. 79.) At the evidentiary hearing on March 2, 2023, Okoro testified regarding the two changes in counsel in this matter. Attorney Mueller was appointed as Okoro's counsel at his arraignment on August 30, 2018. (Doc. 18.) Okoro felt that he and Attorney Mueller worked well together and Okoro wanted Attorney Mueller to continue representing him through trial. Okoro was disappointed when he learned that Attorney Mueller was changing his practice and would not be able to represent him any longer. On June 3, 2020, the court permitted Attorney Mueller to withdraw as counsel and appointed Attorney Daniels. (Doc. 77.)

Shortly after his appointment, Attorney Daniels moved to continue the trial date because he had not yet received the discovery in this case from Attorney

Mueller and anticipated that the discovery would be voluminous.  (Doc. 79.)  The court granted that continuance request which continued the trial by 63 days.

The court weighs this period of delay resulting from the change in counsel from Mueller to Daniels as neutral.  It is clear from Okoro's testimony that he did not seek a change in counsel; rather, he wanted to continue litigating this case with Attorney Mueller.  The Government did not present any evidence to rebut this testimony.  Therefore, because Okoro had no choice in the matter, the court views this time as neutral and will not weigh this time against Okoro.

### iii. Court *sua sponte* continuance requests

On four occasions, the court *sua sponte* continued trial.  (Docs. 75, 76, 94, 110, 120.)  Two continuances occurred early in the COVID-19 pandemic when the court generally continued all trials due to public health concerns.  (Docs. 75, 76.)  One continuance followed the appointment of Okoro's current counsel after counsel notified the court of a potential conflict of interest due to his prior employment with the court.  (Docs. 93, 94.)  The court generally continued trial to allow time for counsel to confer with his client about waiving the potential conflict and prepare a motion to dismiss.  (*Id.*)  Okoro ultimately waived the potential conflict of interest and counsel filed Okoro's second motion to dismiss based on Sixth Amendment violations.  (Docs. 95, 101.)  After ruling on the motion to dismiss, the court set a new date for trial.  (Doc. 110.)  Finally, following

reassignment of this case to the undersigned, the court continued the trial by one week to accommodate the court's schedule.  (Doc. 120.)  This time of 377 days will be counted as neutral because neither party can be faulted for a global pandemic, the court's schedule, and a potential conflict of court-appointed counsel.

### iv. The Government's motions to continue

On two occasions, the Government requested a continuance of trial over Okoro's objection.  (Docs. 83, 85.)  However, these continuance requests tied into challenges due to the COVID-19 pandemic.  At the time, the courthouse could only hold one trial at a time due to COVID-19 restrictions and Government witnesses were in other states and Canada, causing difficulty with their ability to travel during the pandemic.  (*Id.*)  The COVID-19 pandemic caused the court to limit the courthouse to one jury trial at a time to accommodate for social distancing and other safety measures.  Furthermore, the pandemic created witness availability issues due to travel restrictions.  This time, along with the time between arraignment and Okoro's first trial date of November 5, 2018, totaling 313 days should be weighed against the Government, but not heavily.

### v.  Summary of the reason for delay

In sum, the court finds that the overwhelming majority of the reason for delay in this case is neutral.  There are 2,786 days of delay in this case that cannot reasonably and justly be attributed to either party.  Okoro takes the blame for 419

days of delay, while the Government is responsible for 650 days.  Although the
number of days of delay directly attributable to each party is only slightly higher
for the Government, the court notes the extraordinary length of delay that cannot
be directly attributed to either party.  The time attributable to each party
individually and collectively is dwarfed by the nearly 3,000 days of neutral time.
This delay is extraordinary, presumptively prejudicial, and, in the court's view, the
most significant finding from this analysis.

It is the Government's burden to justify the reasons for delay in bringing
Okoro to trial, and the court is not convinced it has done so.  *See Battis*, 589 F.3d
at 680.  Moreover, neutral reasons for delay weigh against the Government, though
not heavily. *See Claxton*, 766 F.3d at 294–95 (quoting *Battis*, 589 F.3d at 679).
For these reasons, the court weighs this factor against the Government, though not
heavily.

### 3. Assertion of His Right

The court thus turns to the third factor for consideration: the defendant's
assertion of his right, "including 'the frequency and force' of such assertions."
*United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014) (quoting *Barker*, 407
U.S. at 529).  This factor is "entitled to strong evidentiary weight in determining
whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32.
In *Barker*, the Court specifically emphasized that a "failure to assert the right will

make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. A defendant's assertion of his speedy trial right "must be viewed in the light of [the defendant's] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986).

Okoro argues that the record establishes that this factor weighs in favor of dismissal. (Doc. 174, pp. 26–27.) He lists five categories of evidence to support this. (*Id.*) First, Okoro has fully litigated two prior motions to dismiss based on non-frivolous assertions of his speedy-trial rights as well as a motion for reconsideration of the court's decision on one motion. (*Id.* at 26.) Second, the record establishes Okoro's willingness to stand trial, particularly because he objected to two continuances of trial requested by the Government. (*Id.*) Third, some of the motions to continue trial filed by Okoro were to give counsel time to gather discovery from the Government and get acquainted with this case. (*Id.* at 27.) Fourth, Okoro filed other motions to continue trial because the Government "despite a significant (multi-year) head start, was unable to promptly produce discovery in 2019 and 2020, and could not promptly inform new counsel what discovery had already been produced." (*Id.*) Fifth, some delays were outside of Okoro's control, including the COVID-19 pandemic, prior counsel resigning from the CJA Panel, and the Government obtaining continuances over Okoro's objection. (*Id.*)

The Government rests on Judge Rambo's finding that Okoro had asserted his right to a speedy trial with a qualification. (Doc. 178, pp. 16–17.) In the 2022 opinion, Judge Rambo stated: "The weight afforded to Okoro's assertion of his rights, however, is limited under the circumstances, because while his actions that have delayed this matter may not evidence a bad faith effort to hamper the government, they also do not indicate a particular readiness or willingness to stand trial." (Doc. 108, p. 12.) Thus, the Government concludes that this ruling should be followed under the law of the case doctrine. (*Id.*)

In his reply brief, Okoro emphasizes the five reasons originally detailed in his opening brief. (Doc. 179, pp. 16–18.) In doing so, Okoro submits that "the court should not hold it against Okoro for rightfully asserting viable case- and count-dispositive issues, including his Sixth Amendment right to a speedy trial." (*Id.* at 18.)

The *Burkett* holding is again instructive to the court in that the defendant's "tenacity in pursing his claims heavily weigh[ed] this factor in his favor." *Burkett*, 951 F.2d at 1441. The Third Circuit stated that the defendant "sought merely to compel the Blair County Court to act upon his post-trial motions, or to obtain counsel who would either petition the court to act, to preserve his speedy trial rights, or to secure his appeal rights." *Burkett*, 951 F.2d at 1441. Similarly, the court in *Akinola* also found that the defendant asserted his speedy trial rights

24

sufficiently to weigh this factor in the defendant's favor.  2017 WL 77414 at *4.

The defendant asserted his rights in a bail motion, a letter to the court "in which he

represented that then-counsel waived Defendant's speedy trial rights against

Defendant's wishes, and in an appeal denying the defendant's request for bail to

the Third Circuit.  *Id.*  The court found that because the reason for delay did not

entirely fall on the defendant, the court declined "to find that Defendant's conduct

mitigated the assertions of his speedy trial rights to a point that the assertion of

same was rendered a nullity."  *Id.*  Accordingly, the court found that this factor

weighed in the defendant's favor.

Once again, this court is persuaded by *Burkett* and *Akinola*.  Okoro has

consistently, since arriving in the United States for his arraignment, asserted his

Sixth Amendment right to a speedy trial.  In comparison to *Akinola*, where three

filings were found sufficient to assert the defendant's speedy trial rights, Okoro has

asserted his right to a speedy trial in four substantive motions, a motion for

reconsideration, and opposition to two Government motions for continuance.  (*See*

Docs. 42, 83, 85, 101, 111, 171.)  While he has agreed to and even requested some

trial continuances, the reasons provided did not demonstrate that Okoro was

engaging in dilatory or strategic delay or that he was not actively preparing to

stand trial.  Rather, as detailed in his brief, Okoro has demonstrated a willingness

to vigorously litigate this case from extradition through to trial.  Accordingly, the court finds that this factor weighs in favor of Okoro without qualification.

### 4. Prejudice

Finally, the court considers the issue of prejudice to Okoro.  The Supreme Court has identified "three types of harm that arise from unreasonable delay between formal accusation and trial: (1) 'oppressive pretrial incarceration;' (2) 'anxiety and concern of the accused;' and (3) 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." *Claxton*, 766 F.3d at 296 (quoting *Doggett*, 505 U.S. at 654).  While excessive delay can lead to a presumption of prejudice, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett*, 505 U.S. at 655−56.

Okoro sets forth three arguments in support of his assertion of specific prejudice.  (Doc. 174, pp. 17–26.)  First, Okoro submits that he was specifically prejudiced from the delay between indictment and arrest.  (*Id.* at 18–21.)  He details that during this time period, four alleged co-conspirators had their cases fully litigated from indictment through sentencing.  (*Id.* at 18–19.)  Okoro argues that he could have engaged in a joint-defense agreement with his alleged co-

26

conspirators and more thoroughly investigated his defense by interviewing and coordinating his defense with the co-conspirators. (*Id.* at 19–21.)

Next, Okoro submits that because he has no ties to this District or the United States, he has never been eligible for release from pretrial detention. (*Id.* at 22.) Citing to research papers, he argues that the likelihood of being convicted continues "to increase across the extraordinary period of delay." (*Id.*)

Lastly, Okoro details the ways he has suffered oppressive pretrial detention, anxiety and concern, and alienation from his family in Canada. (*Id.* at 22–26.) Okoro, who resided in Canada prior to his extradition for this case, has not seen his wife or young son in person in over five years. (*Id.* at 23.) He also has only been able to videoconference with his family once during his five-plus years of incarceration in the United States. (*Id.*)

As to the conditions of his confinement, Okoro argues that being detained has caused him to have a variety of medical issues. He asserts that due to poor ventilation and use of controlled substances by other detainees, he has difficulty breathing. (Doc. 176, pp. 24–25.) He has been confined to his cell for twenty-three hours per day, contracted COVID-19, experienced "uncontrolled hypertension," developed an issue inside his nose that makes him gasp for air while sleeping, and contracted an eye infection that temporarily caused double vision in one eye. (*Id.* at 25.) Okoro submits that this case has caused stress-

induced anxiety and is what is believed to be the cause of his uncontrolled

hypertension.  (*Id.*)  It is also noted that Okoro has been detained throughout the

COVID-19 pandemic, which resulted in more restrictions on activities,

interactions, and resources.  (Doc. 174, pp. 25–26.)

Ultimately, Okoro submits that each of these elements of specific prejudice,

taken together, warrants this factor weighing in his favor.

The Government again asserts that the law of the case doctrine applies, and

only new factors arising since April 2022 should be considered in this motion.

(Doc. 178, pp. 17–18.)  In doing so, the Government again refers the court to its

prior briefs and recaps the 2019 and 2022 opinions.  (*Id.*)  In the 2019 opinion,

Okoro did not raise the issues of pretrial incarceration or anxiety.  (*Id.* at 19 (citing

Doc. 65, p. 10).)  Judge Rambo held that Okoro had "not suffered sufficient

prejudice, attributable to the USAO's negligent delay, to justify dismissing all the

charges against him."  (Doc. 65, p. 11.)

The Government then notes that Okoro raised oppressive pretrial

incarceration and anxiety and concern in his second motion to dismiss.  (Doc. 178,

p. 19.)  It submits that Okoro has not raised new evidence to warrant the court to

reconsider its prior rulings.  (*Id.* at 19–20.)  In the 2022 opinion, Judge Rambo held

that Okoro's conditions of confinement and anxiety "carry little weight and are

substantially discounted in light of the defense's own role in delaying trial."  (Doc.

108, p. 16.)  Then, in the order denying Okoro's motion for reconsideration, Judge

Rambo similarly found that the other *Barker* factors outweighed Okoro's

arguments regarding prejudice.  (Doc. 115, p. 2.)

As to the specific health concerns suffered by Okoro, the Government

submits that there are no medical records that show Okoro is "suffering from any

serious medical conditions that threatens his overall health."  (Doc. 178, pp. 21–

22.)  Thus, according to the Government, the court should not place much weight

on this evidence.  (*Id.* at 22.)

Regarding the impairment of Okoro's defense, the Government again relies

on the prior rulings in this case.  (*Id.* at 22–23.)  Citing the 2022 opinion, the

Government submits that this court should come to the same conclusion as Judge

Rambo as to the potential for a joint defense agreement and interviewing co-

conspirators—these are speculative arguments that are insufficient to warrant

dismissal.  (*Id.*)

Having considered each of the parties' arguments relating to prejudice, the

court will being with the question of whether Okoro's defense has been impaired

by the passage of time.  The court observes that this case has been pending for over

ten years, making the ability to locate defense witnesses more challenging.  The

court also notes that some of the alleged co-conspirators have been deported and

others may be difficult to locate to interview.  Simply put, the court credits

Okoro's assertion that the extraordinary passage of time in this case makes it more difficult to defend.

The court finds that the difficulty in defending this case based on the extraordinary passage of time is not an unduly speculative assertion. In *Doggett*, the court recognized that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." 505 U.S. at 655. The Court noted that "[w]hile the Government ably counter[ed] [Defendant's] efforts to demonstrate particularized trial prejudice, it has not, and probably could not have, affirmatively proved that the delay left his ability to defend himself unimpaired." *Id.* at 658, n.4.

The Third Circuit addressed the challenges to proving impairment to the defense from the passage of time in *United States v. Velazquez*, 749 F.3d 161 (2014). The court stated: "Forecasting how faded memories could harm [defendant] is precisely the sort of difficult-to-obtain proof that supports the finding of general prejudice in a case of extraordinary delay." *Id.* at 185. Relying on *Doggett*, the court noted that "the government faces a high, and potentially insurmountable, hurdle in seeking to disprove general prejudice where the period of delay is extraordinary long." *Id.* Accordingly, the Third Circuit found that this weighed in favor of the defendant. (*Id.* at 185–86.)

As to Okoro's assertion of impairment to his defense, whether considered as specific or general prejudice, the court finds that Okoro has proved his point. The extraordinary delay of more than ten years between indictment and trial has clearly impaired Okoro's ability to mount a defense.

Turning to Okoro's assertions of oppressive pretrial detention, anxiety, and concern, the court finds that the length of pretrial detention and the problems Okoro has experienced during pretrial detention are significant. In *Barker*, the Court stated:

> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

407 U.S. at 532–33. Here, Okoro has been detained in the United States since his arraignment in August 2018. During that time, Okoro has not been outside of the prison other than being transported to the courthouse and the hospital. Okoro has suffered from several medical issues related to his incarceration and the prosecution of this case. He developed a lump in his nostril/throat that became increasing uncomfortable making it difficult to swallow. (Doc. 176, p. 43.) Okoro testified that he believes this, along with increased nasal congestion and allergies,

are due to the constant fog of synthetic marijuana throughout his detention facility. (*See id.* at 44.)  This has caused him to wake up at night gasping for air.  (*Id.* at 45, 47.)

Okoro contracted COVID-19 in the summer of 2020.  (*Id.* at 41.)  He testified that he felt like he was going to die and was extremely frightened.  Okoro has also experienced high blood pressure since being incarcerated, an issue he attributes to the stress of this case and his detention.  (*Id.* at 41–50.)  He has consistently stated this during his pretrial detention as reflected in his medical records.  (*Id.*)  Recently, Okoro had an eye infection that caused temporary double vision.  (*Id.* at 48.)

Further, Okoro's ability to enjoy family support has been eviscerated while in pretrial detention.  Okoro has been in custody in the United States since August of 2018.  During this time, he has not seen his wife or son as they reside in Canada and are not U.S. citizens.  According to his testimony, Okoro's son, who was six years old the last time he saw him, was his life.  Being detained during the pendency of this action has caused Okoro to miss his son growing from a boy to a teenager.  As he testified at the hearing, Okoro can never get those years back with his son regardless of the outcome of this case.  Furthermore, Okoro testified that the detention facility has not been able to provide video visits to him.

Additionally, during Okoro's pretrial detention, the COVID-19 pandemic created unique health challenges for detention centers and prisons. As a result, Okoro, was in his cell for twenty-three hours per day, eating, sleeping, and going to the bathroom in the same small cell. Programs and resources were suspended. While this aspect of Okoro's pretrial detention is not unique to him, it has nonetheless impacted him negatively, and adds to a finding of oppressive pretrial detention.

During the more than five years of pretrial detention in the United States, Okoro has been presumed innocent. As stated succinctly by the Supreme Court: "[i]posing [these] consequences on anyone who has not yet been convicted is serious." *Barker*, 407 U.S. at 533. Taken together, on the basis of Okoro's pretrial detention, which was oppressive, the very real anxiety and concerns he has experienced due to this case, and the impairment to his ability to defend this indictment due to the extraordinary passage of time, the court finds that Okoro has suffered specific and general prejudice. Thus, this factor weighs heavily in favor of dismissal.

## CONCLUSION

Based on the foregoing discussion, the court concludes that the *Barker* factors clearly weigh in favor of dismissal of the indictment.  The court finds that Okoro's Sixth Amendment right to a speedy trial has been violated.  Thus, the court will grant Okoro's motion to dismiss the indictment.  An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 31, 2023